O

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| In Re:<br><br>WONDERLAND ENCHANTED BAKERY AT THE GROVE, INC.<br><br>Debtor.<br><br>PETER ADDERTON; FRED GOLDRING; and WONDERLAND PARTNERS LLC,<br><br>Plaintiffs,<br>v.<br><br>WONDERLAND BAKERY, INC.; WONDERLAND ENCHANTED BAKERY AT THE GROVE, INC.; SONDRA AMES; ALLYSON AMES; and Does 1 through 20, inclusive,<br><br>Defendants. | Case No. 2:11-cv-9515-ODW<br>USBC Case No. 2:11-bk-13330-ER<br><br>**ORDER DENYING DEFENDANTS' MOTION TO DISQUALIFY PLAINTIFFS' COUNSEL SUSAN HARRISON [14]** |

## I. INTRODUCTION

Under California law, an attorney may not represent a new client that is adverse to a former client, without a waiver from the former client, if the attorney obtained confidential information from the former client that is material to the new client's case. Defendants seek to disqualify Plaintiffs' counsel Susan Harrison, alleging that

she obtained Defendants' confidential information because: (1) she was a former Raines Feldman, LLP attorney; and (2) she maintains a relationship with the Raines firm. Having carefully considered the papers filed in support of and in opposition to the instant Motion to Disqualify, the Court deems the matter appropriate for decision without oral argument. Fed. R. Civ. P. 78; L.R. 7-15.

## II. FACTUAL BACKGROUND

In 2005, Defendants Sondra and Allyson Ames founded Wonderland Bakery, Inc. in Newport Beach, California. (Mot. 5.) In 2009, they formed Wonderland Enchanted Bakery at the Grove, Inc. to control their new store in Los Angeles. (*Id.* at 5–6.) Thereafter, Plaintiffs Peter Adderton and Fred Goldring proposed a partnership with the Ameses and offered to supply all of the capital for the new store. (*Id.* at 6.) On September 21, 2010, Adderton, Goldring, and the Ameses formed Wonderland Partners, LLP, dividing the shares equally among the four members. (*Id.*) They also hired the Raines firm to represent Wonderland Partners. (*Id.*)

On October 11, 2010, Wonderland Bakery, Inc. retained the Raines firm to represent it in a construction litigation. (Mot. 7.) Several days later on October 15, 2010, Wonderland Partners, Inc.,[1] Wonderland Retail Holdings LLC, and Wonderland Partners at the Grove LLC finalized an engagement agreement with the Raines firm. (Mot. Ex. A.) The engagement agreement expressly identifies these corporate entities as the clients, and states that the Raines firm does not represent the individual owners or the Ameses' Wonderland entities. (Mot. Ex. A at 3.)

Not long after, the parties had a falling out. Because of the growing conflict between Adderton and Goldring on one side, and the Ameses on the other, the Raines firm prepared a conflict waiver on January 14, 2011 for the parties to execute. (Mot. Ex. G.) Under the conflict waiver, the Raines firm may not: "represent Peter Adderton and or Fred Goldring as individuals and or any corporate entities in

---

[1] "Wonderland Partners, Inc." in the engagement agreement appears to refer to Wonderland Partners, LLC.

2

arbitration and or litigation in any and all matters known or unknown against Sondra Ames, Allyson Ames and or any Wonderland entities." (Mot. Ex. G., Addendum C.)

Harrison worked on two matters as of counsel for the Raines firm—the first for two weeks in September of 2010, and the second from late 2010 until January 4, 2012. (Harrison Decl. ¶¶ 5–7.) These two cases did not involve Plaintiffs, Defendants, or any Wonderland entities. (*See id.* ¶¶ 5–12.) During this time, she maintained her own office in Rancho Palos Verdes. (*Id.* ¶ 8.) She did not have an office at the Raines firm, did not have access to the Raines firm's files (except for documents for her two cases), and only attended office meetings for her two cases. (*Id.*)

Defendants allege that Harrison hid her previous employment with the Raines firm and her relationship with its principals. (Mot. 9; Reply 3.) More importantly, Defendants claim that Harrison acts under the direction of the Raines firm and possesses Defendants' confidential information that the Raines firm acquired during its representation of Wonderland Partners. (Mot. 13–15.) For these reasons, Defendants argue that Harrison breached her ethical duty to them and should be disqualified from this litigation.

### III.   LEGAL STANDARD

Courts have the power to disqualify attorneys if the attorney's conduct "actually interferes with the integrity of the court, or actually produces an appearance of impropriety"; there must be clear impropriety that would be "recognized . . . by all reasonable persons." *In re Coordinated Pretrial Proceedings in Petroleum Prods. Antitrust Litig.*, 658 F.2d 1355, 1361 (9th Cir. 1981). To satisfy this burden, it must be "satisfactorily established" that an attorney wrongfully acquired an unfair advantage that undermines the integrity of the judicial process and will have a continuing effect on the proceedings before the court. *La Jolla Cove Motel and Hotel Apartments, Inc. v. Super. Ct.*, 121 Cal. App. 4th 773, 791 (2004). Furthermore, information that was not confidential to begin with does not become so simply because it is conveyed to another attorney. *Id.*

     For that matter, an attorney cannot be automatically disqualified based on the assumption that she received confidential information from another attorney; rather, the presumption is a rebuttable one. *Kirk v. First Am. Title Ins. Co.*, 183 Cal. App. 4th 776, 809–810 (2010). One reason for this is that disqualifying an attorney tends to impose a substantial hardship on the disqualified attorney's client, who is forced to bear the time and cost of finding another attorney. *La Jolla Cove Motel*, 121 Cal. App. 4th at 791. Moreover, the right to counsel of one's choice is critical to the judicial process. *Id.*

## IV.   DISCUSSION

     Defendants allege that Harrison obtained Defendants' confidential information from the Raines firm. Yet, Defendants fail to point to any specific confidential information, unknown by Plaintiffs, shared in confidence with the Raines firm. That is, because the Raines firm represented Wonderland Partners and not its individual owners, any statements the Ameses made to the Raines firm in its capacity as counsel for Wonderland Partners, are not confidential to Plaintiffs. In fact, these communications may be shared between the Plaintiffs and Defendants, because they are all owners in their joint enterprise. Therefore, since any statements made by Defendants to the Raines firm are not confidential to the Plaintiffs,[2] these statements do not automatically become privileged now that Plaintiffs and Defendants sit on opposite sides of the courtroom.[3]

     Further, Defendants cannot show that Harrison's continued representation will have a detrimental and continuing effect on the proceedings. Defendants allege that Harrison has a substantial relationship with the Raines firm and offered evidence that she labors under their direction. But Defendants cannot show that Harrison has

---

[2] Although Defendants were separately represented by the Raines firm in their construction litigation, Defendants do not allege that Harrison obtained any confidential information exclusive to the construction litigation.

[3] While Plaintiffs are privy to all of Defendants' confidential information arising from the Wonderland Partners enterprise, this information still remains confidential as to all third parties.

obtained or will obtain any confidential information that Plaintiffs are not already privy to.

## V.  CONCLUSION

Defendants' allegations fail to satisfactorily establish that Harrison acquired an unfair advantage, let alone any confidential information.  The evidence does not demonstrate clear impropriety.  Thus, for the reasons discussed above, Defendants' Motion to Disqualify is **DENIED**.

**IT IS SO ORDERED.**

June 11, 2012

_____
**OTIS D. WRIGHT, II
UNITED STATES DISTRICT JUDGE**